United States District Court
Southern District of Texas
**ENTERED**
August 31, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| MARIA DE JESUS VALVERDE, | § |
| | § |
| Plaintiff, | § |
| | § |
| VS. | § |
| | § CIVIL ACTION NO. 7:21-cv-00240 |
| MAXUM CASUALTY INSURANCE | § |
| COMPANY and RODGERS PAUL | § |
| TRUITT, | § |
| | § |
| Defendants. | § |

## <u>OPINION AND ORDER</u>

The Court now considers "Defendant Maxum Casualty Insurance Company's 12(b)(6) Motion for Partial Dismissal."[1] Plaintiff has not filed a response and the time for doing so has passed, rendering Defendant's motion unopposed by operation of this Court's Local Rule.[2] After considering the motion, record, and relevant authorities, the Court **GRANTS** Defendant's motion and **DISMISSES** Defendant Rodgers Paul Truitt from this case with prejudice.

### I. BACKGROUND AND PROCEDURAL HISTORY

This is an insurance dispute. Plaintiff Maria De Jesus Valverde commenced this case with her original petition in the 92nd District Court of Hidalgo County, Texas, on May 18, 2021.[3] Plaintiff sued her insurer, Defendant Maxum Casualty Insurance Company, and its insurance adjuster agent, Defendant Rodgers Paul Truitt,[4] alleging that Defendant Truitt "performed an

---

[1] Dkt. No. 10.
[2] LR7.4 ("Failure to [timely] respond to a motion will be taken as a representation of no opposition.").
[3] Dkt. No. 1-3.
[4] Plaintiff may have misnamed this Defendant. In one filing, Defendant Maxum refers to Defendant Rodgers Paul Truitt as "Roger Paul Truitt," Dkt. No. 1-5 at 2, ¶ 1, but in another filing, Defendant Maxum uses "Rodgers Paul Truitt." Dkt. No. 3 at 2, ¶ 4. The potential misnomer appears to be irrelevant. *Compare* Dkt. No. 1-5 at 3, ¶ 3 (accepting Truitt's liability to Plaintiff Valverde), *with* TEX. INS. CODE ANN. § 542A.006(a) (West 2021) (providing

inadequate and outcome oriented investigation" of the wind and hailstorm damages to Plaintiff's "strip center" in Hidalgo County and that Defendant Maxum wrongfully refused to pay insurance benefits.[5] On June 14, 2021, Defendant Maxum filed a notice of election of responsibility pursuant to Texas Insurance Code § 542A.006 in state court.[6] Later that same day, Maxum removed the case to this Court.[7] Maxum is a Connecticut corporation and its principal place of business is in Connecticut.[8]

The parties filed their initial joint discovery/case management plan on July 12th.[9] In the Court's subsequent order, the Court recognized that Defendant Truitt "appears to share Texas citizenship with Plaintiff" and that the Court may lack diversity jurisdiction under 28 U.S.C. § 1332 over this case.[10] The Court accordingly ordered all parties to "clarify their positions vis-à-vis this Court's jurisdiction."[11] Defendant Maxum's instant motion to dismiss Defendant Truitt followed on July 28th.[12] Plaintiff failed to timely respond and Defendant's motion is submitted unopposed for the Court's consideration.[13]

## II. DISCUSSION

### a. Legal Standards

It is a "well-settled principle that litigants can never consent to federal subject matter jurisdiction, and the lack of subject matter jurisdiction is a defense that cannot be waived."[14]

---

that "an insurer that is a party to the action may elect to accept whatever liability an agent might have to the claimant for the agent's acts or omissions related to the claim").

[5] *Id.* at 12–13, ¶¶ 10–14.

[6] Dkt. No. 1-5.

[7] Dkt. No. 1.

[8] Dkt. No. 1 at 2, ¶ 4; Dkt. No. 3 at 1, ¶ 1.

[9] Dkt. No. 6.

[10] Dkt. No. 7 at 1.

[11] *Id.* at 2.

[12] Dkt. No. 10.

[13] *See* LR7.3–7.4.

[14] *Gonzalez v. Guilbot*, 255 F. App'x 770, 771 (5th Cir. 2007) (citing *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir.1996)); *see* 28 U.S.C. § 1447(c).

District courts have limited jurisdiction and the authority to remove an action from state to federal court is solely conferred by the Constitution or by statute.[15] "Removal [to federal court] is proper only if that court would have had original jurisdiction over the claim."[16] The Court has jurisdiction to assess its own federal jurisdiction,[17] and may use this limited authority "to dismiss the party that has been improperly joined" to defeat federal jurisdiction.[18] The Court determines its jurisdiction by considering the plaintiff's claims as they existed at the time of removal,[19] which cannot be defeated by the plaintiff's later amendment.[20]

If the removing party claims federal diversity jurisdiction under 28 U.S.C. § 1332, the removing party must demonstrate complete diversity: that each defendant is a citizen of a different state from each plaintiff[21] and the amount in controversy exceeds $75,000.[22] If each defendant is not a citizen of a different state from each plaintiff, a party—usually a removing defendant—may claim that the plaintiff improperly or fraudulently joined parties to defeat federal diversity jurisdiction. The citizenship of an improperly joined party is then disregarded in determining the Court's jurisdiction.[23] Although a single valid cause of action against a nondiverse defendant precludes federal jurisdiction and requires remand to state court,[24] if "there is no reasonable basis

---

[15] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[16] *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 323 (5th Cir. 2001); *accord Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 294 (5th Cir. 2010)

[17] *United States v. Ruiz*, 536 U.S. 622, 622 (2002).

[18] *Int'l Energy Ventures Mgmt. v. United Energy Grp.*, 818 F.3d 193, 209 (5th Cir. 2016).

[19] *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 668 n.2 (5th Cir. 2007); *see Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) (holding that removal is to be "determined according to the plaintiffs' pleading at the time of the petition for removal").

[20] *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995).

[21] *Corfield v. Dall. Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003); *see McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (quotation omitted) ("[A]ll persons on one side of the controversy [must] be citizens of different states than all persons on the other side.").

[22] *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).

[23] *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc) (quoting 28 U.S.C. § 1441(b)).

[24] *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004).

for the district court to predict that the plaintiff might be able to recover against an in-state defendant," the party was improperly joined and federal jurisdiction vests.[25]

### b. Analysis

Defendant Maxum argues that, because Maxum elected to assume Truitt's liability after inception of this suit under Texas Insurance Code § 542A.006, Plaintiff has no cause of action against Truitt and the Court is therefore bound to dismiss any claim against him and retain diversity jurisdiction over this case.[26] This Court previously analyzed this issue in detail in *Ramirez v. Allstate Vehicle & Property Insurance Co.* and "induced a bright-line rule: a non-diverse defendant is improperly joined when 'the [diverse] defendant has demonstrated that there is no possibility of recovery by the plaintiff against the in-state defendant.'"[27] Because Maxum's § 542A.006 election renders Plaintiff unable to recover against Truitt,[28] the Court is inclined to follow its prior precedent and dismiss Truitt.

However, in the time between *Ramirez* and Defendant's motion to dismiss, the Honorable Mark T. Pittman of the United States District Court for the Northern District of Texas issued two opinions, *Morgan* and *Kessler*, disagreeing with this Court's analysis.[29] Both opinions were issued on May 25, 2021, within 38 minutes of each other, and they are substantially identical in their rejection of this Court's opinion that jurisdictional facts are determined at the time of removal, so the improper joinder rule requires dismissal of the nondiverse insurance adjuster after a § 542A.006 election, and their further rejection of this Court's judgment that the voluntary-

---

[25] *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) (quoting *Smallwood*, 385 F.3d at 573).

[26] Dkt. No. 10 at 3, ¶ 6.

[27] *Morgan v. Chubb Lloyds Ins. Co. of Tex.*, No. 4:21-cv-00100-P, 2021 WL 2102065, at *5 (N.D. Tex. May 25, 2021) (Pittman, J.) (alteration in original) (quoting *Ramirez v. Allstate Vehicle & Prop. Ins. Co.*, 490 F. Supp. 3d 1092, 1105 (S.D. Tex. 2020) (Alvarez, J.)).

[28] *See Ramirez*, 490 F. Supp. 3d at 1110–11 & nn.130–38.

[29] *Morgan*, 2021 WL 2102065; *Kessler v. Allstate Fire & Cas. Ins. Co.*, No. 4:21-cv-00173-P, 2021 WL 2102067 (N.D. Tex. May 25, 2021) (Pittman, J.).

involuntary doctrinal rule does not impair that result. In light of Judge Pittman's thoughtful opinions, the Court finds good cause to revisit *Ramirez* and ascertain whether dismissal of Defendant Truitt is still the right result in this case. In this opinion, the Court will focus on the later-issued *Morgan*, though the analysis is equally applicable to *Kessler*.

The Court first establishes the rules and doctrines at issue. Under 28 U.S.C. § 1446(b)(3), a defendant is entitled to remove a case from state court to federal court within 30 days after receipt of "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." In other words, a defendant may remove "as soon as the action assumes the shape of a removable case in the court in which it was brought."[30] In this case, Defendant Maxum filed a motion and notice of election of legal responsibility under § 542A.006 in state court,[31] then removed to this Court within 30 days of its election.[32] In doing so, Maxum invoked the improper joinder rule.[33] The improper joinder rule is predicated on the language of 28 U.S.C. § 1441(b)(2), which provides that a case may not be removed to federal court on the basis of diversity jurisdiction "if any of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought."[34] A removing party may demonstrate improper joinder, and thus satisfy federal jurisdiction, by showing the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[35] If the foregoing were the only relevant laws and doctrines, dismissal of Defendant Truitt would be a foregone conclusion.[36]

---

[30] *Powers v. Chesapeake & O. Ry. Co.*, 169 U.S. 92, 101 (1898).

[31] Dkt. No. 1-5.

[32] Maxum's receipt of notice that its motion had been filed in state court creates removal jurisdiction under 28 U.S.C. § 1446(b)(3). *Cf. Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002).

[33] Dkt. No. 1 at 4, ¶ 9.

[34] *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc) (emphasis in original).

[35] *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) (quotation omitted).

[36] *See Ramirez v. Allstate Vehicle & Prop. Ins. Co.*, 490 F. Supp. 3d 1092, 1107–08 (S.D. Tex. 2020) (Alvarez, J.).

However, the voluntary-involuntary rule is an additional stricture:

> "[W]here the case is not removable because of joinder of defendants," *only* "the voluntary dismissal or nonsuit by [the plaintiff] of a party or of parties defendant [sic]" can convert a nonremovable case into a removable one." [The Fifth Circuit has] described this "judicially-created voluntary-involuntary rule" as providing "an action nonremovable when commenced may become removable thereafter only by the voluntary act of the plaintiff."[37]

The voluntary-involuntary rule forms the core of *Morgan*'s disagreement with *Ramirez*. In *Morgan*, the insurer defendant elected to assume the liability of its insurance adjuster defendant under Texas Insurance Code § 542A.006 and moved to dismiss the adjuster in state court.[38] After the state court dismissed the adjuster against the plaintiff's will and the insurer subsequently removed to federal court, upon the plaintiff's motion to remand, *Morgan* held that the plaintiff did not *voluntarily* create federal diversity jurisdiction by choosing to dismiss the in-state adjuster defendant, so the insurer defendant could not establish improper joinder.[39] The *Morgan* decision, which ultimately ruled that the case must be remanded to state court, rests on three predicate determinations: (1) the improper joinder rule does not override and is not an exception to the voluntary-involuntary rule; (2) even if the improper joinder rule overrides the voluntary-involuntary rule, the insurance adjuster is not improperly joined *ab initio* so the improper joinder rule does not require finding federal jurisdiction; and (3) even if the plaintiff appears to have improperly joined an in-state defendant adjuster, lingering doubts must result in remand.[40] This Court respectfully disagrees with all three contentions for the following reasons.

### 1. The Improper Joinder Rule vs. the Voluntary-Involuntary Rule

---

[37] *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 295 (5th Cir. 2019) (second alteration in original) (emphasis in original) (first quoting *Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 281 (1918); then quoting *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006)).
[38] *Morgan v. Chubb Lloyds Ins. Co. of Tex.*, No. 4:21-cv-00100-P, 2021 WL 2102065, at *1 (N.D. Tex. May 25, 2021).
[39] *Id.* at *10.
[40] *Id.* at *6–10.

*Morgan* holds that that the improper joinder rule and voluntary-involuntary rule are two judicial doctrines that protect different interests that "sit in tension: the voluntary-involuntary rule protects a plaintiff's right to choose its forum; the improper-joinder rule protects a defendant's right to a federal forum. Each rule must have some application, and neither can destroy the other."[41] *Morgan* relies on a 2008 student note to hold that, if the improper joinder rule functions as an exception to the voluntary-involuntary rule, that "view effectively wipes out the voluntary-involuntary rule" but the United States Supreme Court holds that the voluntary-involuntary rule has doctrinal vitality that the Fifth Circuit lacks the authority to degrade.[42]

Determining whether *Morgan* is correct requires some exposition of the voluntary-involuntary rule, which is necessary to ascertaining the scope of its application when it conflicts with the improper joinder rule. The voluntary-involuntary rule has its doctrinal genesis in an 1898 Supreme Court case,[43] but took solid form in the 1900 case of *Whitcomb v. Smithson*, in which the state trial court (later affirmed by the state's highest appellate court) directed a verdict in favor of the in-state railway company defendant.[44] When the remaining out-of-state defendants petitioned to remove the case to federal court after the in-state railway company was effectively dismissed, the petition was denied, and the United States Supreme Court affirmed the denial by holding that the directed verdict "was a ruling on the merits, and not a ruling on the question of jurisdiction. It was adverse to plaintiff, and without his assent, and the trial court rightly held that it did not operate to make the cause then removable . . . ."[45] The Supreme Court strengthened the voluntary-

---

[41] *Id.* at *2.

[42] *Id.* at *9 (citing Jeff Fisher, Note, *Everybody Plays the Fool, Sometimes; There's no Exception to the Rule: Procedural Misjoinder is not an Exception to the Voluntary-Involuntary Rule*, 60 BAYLOR L. REV. 993, 1013, 1017 (2008)).

[43] *See Powers v. Chesapeake & O. Ry. Co.*, 169 U.S. 92, 102 (1898) (holding that a case was removable because the plaintiff had discontinued its action against all nondiverse citizens).

[44] 175 U.S. 635, 638 (1900).

[45] *Id.*

involuntary rule in 1909, holding that a case was not removable to federal court even though the New York state court, later affirmed by the Appellate Division, dismissed the plaintiff's claims against the only in-state defendant against the plaintiff's will.[46] In 1915, the Supreme Court summarized the voluntary-involuntary rule as elaborated in *Whitcomb*'s progeny:

> [W]e think it fairly appears from [these cases] that where there is a joint cause of action against defendants resident of the same state with the plaintiff and a nonresident defendant, it must appear, to make the case a removable one as to a nonresident defendant because of dismissal as to resident defendants, that the discontinuance as to such defendants was voluntary on the part of the plaintiff, and that such action has taken the resident defendants out of the case, so as to leave a controversy wholly between the plaintiff and the nonresident defendant.[47]

In short, only the plaintiff's voluntary act could create federal diversity jurisdiction.

However, weighing against the seeming imperviousness of the voluntary-involuntary rule are other Supreme Court opinions. In the 1878 case of *Yulee v. Vose*, the plaintiff sued numerous defendants to collect on a judgment that had been entered by the state court of New York in plaintiff's favor against a railroad company.[48] The state trial court dismissed all of the plaintiff's claims, but the state court of appeals reversed the judgment as to a single defendant who was an endorser "of the notes on which the judgment was rendered."[49] The endorser defendant then sought to remove to federal court on the basis of diversity jurisdiction, since the plaintiff and endorser were citizens of different states.[50] The state trial court refused to cede its jurisdiction, the endorser lost at trial, and the state court of appeals affirmed the state court's jurisdiction and the verdict against the endorser.[51] The United States Supreme Court reversed, holding that the state court of appeals' decision "put the other defendants out of court, or determined that the suit as to them no

---

[46] *Lathrop, Shea & Henwood Co. v. Interior Constr. & Improvement Co.*, 215 U.S. 246, 249–51 (1909).
[47] *Am. Car & Foundry Co. v. Kettelhake*, 236 U.S. 311, 315–16 (1915).
[48] 99 U.S. 539, 539 (1878).
[49] *Id.* at 540.
[50] *Id.*
[51] *Id.* at 541.

longer existed,"[52] so the out-of-state defendant was entitled to remove the case to federal court and the state trial court was not permitted to exercise its jurisdiction over the case.[53] *Yulee v. Vose* therefore squarely conflicts with the later-developed voluntary-involuntary rule[54]: in 1878, a case was removable after the state court dismissed all non-resident defendants against the plaintiff's will, but in 1915, it was not.

Subsequent Supreme Court decisions further obscure the voluntary-involuntary rule. In 1918, the Supreme Court implied that the voluntary-involuntary rule only applied "in the absence of a fraudulent purpose to defeat removal."[55] In 1939, the Supreme Court clarified that it is "always open to the non-resident defendant to show that the resident defendant has not been joined in good faith and for that reason should not be considered in determining the right to remove."[56] These statements imply that a plaintiff's improper or fraudulent joinder of an in-state defendant may furnish grounds for any court, state or federal, to dismiss nondiverse defendants and therefore create or assume federal jurisdiction in spite of the plaintiff's objection. In short, the voluntary-involuntary rule is a thicket of jurisprudence[57] and is, in *Morgan*'s words, "notoriously opaque"[58] such that Supreme Court precedents do not obviously compel any one conclusion with respect to the application of the voluntary-involuntary rule. To determine the proper application of the voluntary-involuntary rule to this case, the Court must look elsewhere.

---

[52] *Id.* at 544.

[53] *Id.* at 546.

[54] *See Strandholm v. Gen. Constr. Co.*, 222 F. Supp. 12 (D. Or. 1963) (holding, under facts similar to those in *Yulee*, that the voluntary-involuntary rule precluded federal jurisdiction), *cited in* John D. Hastie, Note, *Federal Practice: Removal After Resident Defendant is Involuntarily Dismissed*, 17 OKLA. L. REV. 333, 339 (1964).

[55] *Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 282 (1918).

[56] *Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939).

[57] *See Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 295 (5th Cir. 2019) ("But this is an area thick with binding precedent.").

[58] *Morgan v. Chubb Lloyds Ins. Co. of Tex.*, No. 4:21-cv-00100-P, 2021 WL 2102065, at *10 (N.D. Tex. May 25, 2021).

Congress could have brought (and possibly did bring) clarity and precision to this issue in 1949, when Congress amended the removal statutes.[59] The statute, as amended, provided:

> If the case stated by the initial pleading is not removable, a petition for removal may be filed within twenty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.[60]

This Court, in a 1961 opinion by the Honorable Reynaldo Guerra Garza (who was later elevated to the Fifth Circuit), confronted the amended 28 U.S.C. § 1446(b)'s effect on the Supreme Court's jurisprudence on the voluntary-involuntary rule and held that the doctrinal rule "would defeat the purpose of the statute and would thwart the right of a trial in a federal court when the jurisdictional amount permits."[61] Other district courts in the Fifth Circuit agreed.[62] But in 1967, in *Weems v. Louis Dreyfus Corp.*, the Fifth Circuit thoroughly rebuked the idea that the amended statute overrode the voluntary-involuntary rule.[63] By 1992, every federal Court of Appeals to address "the voluntary/involuntary rule . . . held that it survived the enactment of section 1446(b)."[64] These appellate decisions were premised on the legislative history of the statute,[65] specifically, a single House Report that stated that the amendment to the removal statute "is intended to make clear that the right of removal may be exercised at a later stage of the case if the initial pleading does not

---

[59] *See* Act of May 24, 1949, Pub. L. No. 81-72, 63 Stat. 89.

[60] 28 U.S.C. § 1446(b) (1952).

[61] *Parkhill Produce Co. v. Pecos Valley S. Ry. Co.*, 196 F. Supp. 404, 406 (S.D. Tex. 1961) (Garza, J.).

[62] *E.g.*, *Lyon v. Ill. Cent. R.R.*, 228 F. Supp. 810, 811 (S.D. Miss. 1964) ("Something must be read into this statute which the Congress did not write into it before it can be said that a case can become removable from a state court during the trial only in the event a plaintiff voluntarily does something to extricate and completely remove the resident defendant from the suit.").

[63] 380 F.2d 545, 549 (5th Cir. 1967) ("We hold that the voluntary-involuntary rule survived the 1949 amendment . . . .").

[64] *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 72 (7th Cir. 1992) (citing *Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38, 40 n.2 (2d Cir. 1980); *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir. 1988); *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 548 (5th Cir. 1967); *In re Iowa Mfg. Co.*, 747 F.2d 462, 464 (8th Cir. 1984); *Self v. Gen. Motors Corp.*, 588 F.2d 655, 657–60 (9th Cir. 1978); and *DeBry v. Transam. Corp.*, 601 F.2d 480, 486–88 (10th Cir. 1979)).

[65] *See, e.g.*, *In re Iowa Mfg. Co.*, 747 F.2d at 464 (holding that the history of the statute "suggests that the [voluntary-involuntary] rule as announced by the Supreme Court" was incorporated into the statute's meaning).

state a removable case but its removability is subsequently disclosed. This is declaratory of the existing rule laid down by the decisions. (See for example, *Powers v. Chesapeake etc., Ry. Co.*, 169 U. S. 92.)."[66] (*Powers* was the 1898 decision that first created the voluntary-involuntary rule). Nothing supporting this statement may be found in the corresponding Senate Report.[67] Numerous authorities candidly concede that the language of the statute conflicts with, or is otherwise in tension with, the voluntary-involuntary rule.[68] One Eastern District of Pennsylvania opinion persuasively argues that the voluntary-involuntary rule did not survive Congress's 1949 amendment to the statute.[69] Nevertheless, this Court is bound by the Fifth Circuit's decision in *Weems* that the voluntary-involuntary rule persists.[70]

---

[66] H.R. REP. NO. 81-352, at 14 (1949), *reprinted in* 1949 U.S.C.C.A.N. 1254, 1268; *cf.* Comment, *The Effect of Section 1446(b) on the Nonresident's Right to Remove*, 115 U. PA. L. REV. 264, 270 (1966) (alteration in original) (quoting 95 CONG. REC. 6,246, 6,249 (1949)) ("This legislation was introduced in the House as making "not a single substantive change in the law. This is purely corrective [of the revision of titles 18 and 28 of the United States Code passed on June 25, 1948].").

[67] *See* S. REP. NO. 81-303, *reprinted in* 1949 U.S.C.C.A.N. 1248.

[68] *E.g.*, *DeBry v. Transam. Corp.*, 601 F.2d 480, 486 (10th Cir. 1979) ("If s 1446(b) were to be given effect in accordance with its terms, removal would be an occasion for redetermining the diversity jurisdiction. There has been, however, a reluctance to give this section literal effect."); 14C JOAN E. STEINMAN, MARY KAY KANE & A. BENJAMIN SPENCER, FEDERAL PRACTICE AND PROCEDURE § 3723 (3d ed. 1998 & Supp. Apr. 2021) ("Read literally the reference to 'order' in the statute could permit removal when a non-diverse party is eliminated by a court order related to the merits of the dispute, over plaintiff's objection, and some courts have so held."); 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE – CIVIL § 107.140[3][a][ii][C] (4th ed.) (citation omitted) ("Section 1446(b)(3) permits removal within 30 days after receipt by defendant of a paper from which it may first be ascertained that the case is removable. On its face, this appears to conflict with the voluntary-involuntary rule."); Comment, *The Effect of Section 1446(b) on the Nonresident's Right to Remove*, 115 U. PA. L. REV. 264, 269 (1966) ("It is true that the words of the statute, examined without referring to the legislative history, might be interpreted to sanction this result—*i.e.*, it is not inconsistent with the words of the statute to hold that *any* 'order' of a state court which creates diversity would make the case 'removable.'").

[69] *See Bolger v. Utermohlen*, 485 F. Supp. 3d 588, 593–94 (E.D. Pa. 2020).

[70] Although outside the scope of this Court's decision, the Court briefly comments that *Weems* and similar decisions appear to be grounded on an interpretation of 28 U.S.C. § 1446(b) together with its legislative jurisdiction, rather than interpreted strictly upon the words of the statute, as more recent Supreme Court decisions command. *See, e.g.*, *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (quotation omitted) ("When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."); *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020) ("This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment. After all, only the words on the page constitute the law adopted by Congress and approved by the President."). The difference between the 54-year-old *Weems* and seemingly incompatible 2-year-old *Hoyt* opinion, as the Court will elaborate more fully below, seems easily explicable by the textualist judicial philosophy's prevailing over purposivist judicial philosophies in the intervening time. *See* Diarmuid F. O'Scannlain, *"We Are All Textualists Now": The Legacy of Justice Antonin Scalia*, 91 ST. JOHN'S L. REV. 303, 304–06 (2017). The Court suggests that the Fifth Circuit firmly clarify the scope of the voluntary-involuntary rule.

"Complicating matters further, . . . the Fifth Circuit issued the *Hoyt* opinion" in 2019.[71] In *Hoyt*, the plaintiffs sued two in-state defendants and one out-of-state defendant in state court.[72] The state court granted summary judgment in favor of one in-state defendant (C.E.N.), and the plaintiffs voluntarily dismissed their claims against the other in-state defendant.[73] Five days later, the out-of-state defendant removed to federal court.[74] The district court denied two motions to remand and the Fifth Circuit affirmed.[75] The Fifth Circuit held simply, over the dissent of one judge, that the voluntary-involuntary rule did not apply because C.E.N. had been improperly joined.[76] *Hoyt* was fully cognizant of *Weems* and the development of the voluntary-involuntary rule, but held that, since there was no chance that C.E.N. could be brought back into the case because the summary judgment evidence established that C.E.N. simply was not involved in the facts of the case (it did not work on the culvert where the decedent was killed), the plaintiffs' inability to establish a cause of action against C.E.N. rendered the voluntary-involuntary rule inapplicable.[77] *Morgan* insists that *Hoyt* effectively erased the voluntary-involuntary rule: "[The *Hoyt* majority held that] even a contested summary judgment fails to implicate the voluntary-involuntary rule. If that is not an involuntary dismissal, then nothing is."[78] *Morgan* forewarned that the Fifth Circuit's reasoning that the improper joinder rule is an exception to the voluntary-involuntary rule "could herald the end of the [voluntary-involuntary] rule."[79] This is why *Morgan*

---

[71] *Morgan v. Chubb Lloyds Ins. Co. of Texas*, No. 4:21-cv-00100-P, 2021 WL 2102065, at *6 (N.D. Tex. May 25, 2021).

[72] *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 291 (5th Cir. 2019).

[73] *Id.* at 291–92.

[74] *Id.* at 292.

[75] *Id.*

[76] *Id.* at 295–96.

[77] *Id.* at 297 n.4 (citing *Hoyt v. Lane Constr. Corp.*, No. 4:17-cv-780-A, 2017 U.S. Dist. LEXIS 222992, at *4–5 (N.D. Tex. Dec. 4, 2017)).

[78] *Morgan v. Chubb Lloyds Ins. Co. of Tex.*, No. 4:21-cv-00100-P, 2021 WL 2102065, at *9 (N.D. Tex. May 25, 2021).

[79] *Id.* (quoting Jeff Fisher, Note, *Everybody Plays the Fool, Sometimes; There's no Exception to the Rule: Procedural Misjoinder is not an Exception to the Voluntary-Involuntary Rule*, 60 Baylor L. Rev. 993, 1017 (2008)).

disagreed with *Ramirez*; *Morgan* held that *Ramirez* must be incorrect because "the Supreme Court has held that the voluntary-involuntary rule exists. The Fifth Circuit lacks the authority to overrule it. The voluntary-involuntary rule must have some application."[80]

However, there is a guiding lantern through the fog. One rule is consistent with the Supreme Court and Fifth Circuit jurisprudence on 28 U.S.C. § 1446(b)(3), the improper joinder rule, and the voluntary-involuntary rule and governs this case: A case may not be removed from state court to federal court on the basis of federal diversity jurisdiction unless (1) the plaintiff voluntarily dismisses all out-of-state defendants, or (2) the plaintiff improperly joined all out-of-state defendants such that no out-of-state defendant may be restored to the case by any court. The first exception is consistent with the voluntary-involuntary rule and preserves its continuing application. The second exception, contrary to *Morgan*'s assertions, is also consistent with and does not efface the voluntary-involuntary rule for the following reasons. "Supreme Court cases . . . clearly indicate that the [voluntary-involuntary] doctrine has as its policy cornerstone the considerations of finality and efficiency,"[81] which indicate the rule's proper scope. Commentators urge federal courts not to "woodenly" apply to the voluntary-involuntary rule without regard to its scope.[82] The Second Circuit explained that the purpose undergirding the voluntary-involuntary rule "is to protect against the possibility that a party might secure a reversal on appeal in state court of the non-diverse party's dismissal, producing renewed lack of complete diversity in the state court action," so when a plaintiff has foregone her right to appeal the involuntary dismissal of nondiverse defendants, she has committed the *functional equivalent* of a voluntary dismissal,[83]

---

[80] *Id.*

[81] *Self v. Gen. Motors Corp.*, 588 F.2d 655, 662 (9th Cir. 1978) (Ely, J., dissenting).

[82] Note, *Removal of Suits to Federal Courts After the Statutory Deadline: An Old Formula Re-Examined*, 60 Harv. L. Rev. 959, 961–62 (1947); *accord* Comment, *The Effect of Section 1446(b) on the Nonresident's Right to Remove*, 115 U. Pa. L. Rev. 264, 274 (1966) (opining that "the only rational reason for having the voluntary-involuntary rule" is "the court's interest in avoiding cost, delay and duplication" of court proceedings).

[83] *Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38, 40 n.2 (2d Cir. 1980).

which is important because then no court may restore a nondiverse defendant to the case. The Fourth Circuit concurs.[84] Crucially, the Fifth Circuit endorses this rationale and the proper scope of the voluntary-involuntary rule:

> [The voluntary-involuntary has] merit in that it prevents removal of those cases in which the issue of the resident defendant's dismissal has not been finally determined in the state courts. This avoids the duplication and expense which would result if a resident defendant was dismissed on an appealable ground, the nonresident was permitted to remove, and the plaintiff then obtained a reversal of the dismissal in the state appellate courts. On the other hand, that danger does not arise where a plaintiff voluntarily drops a resident defendant since appeal then is not available, and the elimination of the resident defendant from the case is final.[85]

The second exception also harmonizes *Weems* with *Hoyt* despite their seeming inconsistency.[86] In *Weems*, the Fifth Circuit denied removal to federal court because the state court's directed verdict, "wholly involuntary to the plaintiff, is not final in the sense that it is *appealable* in the state courts."[87] Similarly in *Hoyt*, the Fifth Circuit affirmed the denial of remand to state court because there was no possibility of an *appeal* of the state court's order removing the nondiverse defendant.[88] The second exception also explains and gives application to the en banc Fifth Circuit's test for improper joinder. The Fifth Circuit requires this Court to examine "whether

---

[84] *See Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir. 1988) ("If the plaintiff voluntarily dismissed the state action against the non-diverse defendant, creating complete diversity, the state action may be removed because there is no risk that diversity will be destroyed later on. The voluntary act has demonstrated the plaintiff's desire not to pursue the case against the non-diverse party. However, this is not the situation if the non-diverse party has been involuntarily dismissed by order of the state judge. The plaintiff may choose to appeal the dismissal. Although complete diversity may temporarily exist between the parties, suggesting that removal is proper, diversity jurisdiction may ultimately be destroyed if the state appellate court reverses the dismissal of the non-diverse party. Therefore, some cases are not removable despite complete diversity between the parties.").

[85] *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 546 (5th Cir. 1967).

[86] The Court finds this approach superior to *Morgan*'s decision to openly defy the Fifth Circuit's opinion in *Hoyt*. *See Morgan v. Chubb Lloyds Ins. Co. of Tex.*, No. 4:21-cv-00100-P, 2021 WL 2102065, at *5 n.2 (N.D. Tex. May 25, 2021) ("With due respect to the learned and distinguished Fifth Circuit panel, the undersigned must disagree with [*Hoyt*'s] conclusion.").

[87] *Id.* at 548 (emphasis added); *see Jenkins v. Nat'l Union Fire Ins. Co. of Pa.*, 650 F. Supp. 609, 612 (N.D. Ga. 1986) (omission in original) (quoting *LGP Gem, Ltd. v. Cohen*, 636 F. Supp. 881, 883 (S.D.N.Y. 1986) ("The reasoning of the *Weems* decision . . . indicates that the finality of the dismissal, not the plaintiff's participation in it, is the factor that determines removability.").

[88] *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 297 & n.4 (5th Cir. 2019). While this Court finds nothing in the opinion that supports the majority's conclusion that the plaintiff could not appeal the summary judgment, that was the court's finding.

the defendant has demonstrated that there is *no possibility* of recovery by the plaintiff against an in-state defendant, which stated differently means that there is *no reasonable basis* for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[89] The Fifth Circuit's high bar for improper joinder does not *override* the voluntary-involuntary rule, but simply cabins the rule to its rational limitations so that it only has effect when there is the possibility of some court restoring an in-state defendant to the case, which would undo federal diversity jurisdiction.[90] The second exception is even consistent with the United States Supreme Court's 1915 *American Car & Foundry Co. v. Kettelhake* decision. In that case, the Supreme Court paid special attention to the fact that the "resident defendants had not 'so *completely* disappeared from the case as to leave the controversy one *entirely* between the plaintiff and a nonresident corporation,'" because the plaintiff had preserved her right to set aside her voluntary nonsuit, so there could be "a section of the suit in the United States court and a section [in state court]" if the state appellate court reversed the state trial court's dismissal of nondiverse defendants.[91] *Kettelhake*, by expressing concern over the true finality of the out-of-state defendant's removal from the case, further supports the idea that the voluntary-involuntary rule does not override the improper joinder rule in instances in which there is no possibility that a nondiverse defendant will be restored to the case, which matches the Fifth Circuit's test for improper joinder. *Wilson v. Republic Iron & Steel Co.* further supports this reading.[92]

---

[89] *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) (emphases added) (quoting *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)), *quoted in Vaillancourt v. PNC Bank, NA*, 771 F.3d 843, 847 (5th Cir. 2014) (per curiam).

[90] *See supra* notes 82–85; *cf. Insinga v. LaBella*, 845 F.2d 249, 254 (11th Cir. 1988) (per curiam) ("Fraudulent joinder is a well established exception to the voluntary-involuntary rule.").

[91] 236 U.S. 311, 316–17 (1915) (emphases added).

[92] *See* 257 U.S. 92, 97–98 (1921) (holding, in a case in which the plaintiff sued his diverse employer and nondiverse co-employee, that the plaintiff had only joined the co-employee in bad faith without any intention to prosecute and that the diverse defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy").

Although the Court acknowledges the Northern District of Georgia's cogent argument, relied upon in *Morgan*, that the voluntary-involuntary rule "is not based upon an appealability/finality rationale,"[93] the Atlanta court's argument is not controlling[94] and is ultimately unpersuasive in light of the numerous appellate precedents, including in the Fifth Circuit, and scholarly commentary that identify the appealability/finality rationale as the underlying purpose and defining scope of the voluntary-involuntary rule. Similarly, *Morgan* is not controlling and ultimately unpersuasive in its imprecise holding that the Fifth Circuit has effectively abolished the voluntary-involuntary rule despite lacking the authority to do so.[95] The Court may read the Fifth Circuit's precedents to have folded the voluntary-involuntary rule into the test for improper joinder,[96] because nondiverse defendants are only held to be improperly joined (and therefore remand to state court is denied over the plaintiff's objection), when the plaintiff has *no possibility* of recovery against the nondiverse defendants, or alternatively the plaintiff has voluntarily discontinued the plaintiff's attempts to pursue claims against all nondiverse defendants. In either case, the finality of the nondiverse defendants' "exit" from the case is assured[97] and there is no concern over a later reversal and abolition of federal jurisdiction in the case, which is the whole reason for and only justification supporting the voluntary-involuntary rule.[98]

---

[93] *Jenkins v. Nat'l Union Fire Ins. Co. of Pa.*, 650 F. Supp. 609, 614 (N.D. Ga. 1986).
[94] *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE – CIVIL § 134.02[1][d] (3d ed. 2011)) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").
[95] *See Morgan v. Chubb Lloyds Ins. Co. of Tex.*, No. 4:21-cv-00100-P, 2021 WL 2102065, at *9 (N.D. Tex. May 25, 2021).
[96] *See Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006) ("The tobacco defendants counter that the voluntary-involuntary rule is inapplicable because the health care defendants were not properly-joined parties. We agree.").
[97] *See Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 297 (5th Cir. 2019).
[98] *See supra* notes 81–92 and accompanying text.

Accordingly, the Court reaffirms its *Ramirez* holding that the improper joinder rule governs Defendant Maxum's election under Texas Insurance Code § 542A.006 and that the voluntary-involuntary rule does not require the Court to reach a different result.[99] This is not the end of the discussion, however, and the Court turns to the next point.

2.   *Improper Joinder is Assessed at the Time of Removal vs. Improper Joinder is Assessed at the Time of the Claim*

Even if the improper joinder rule governs an insurer's § 542A.006 election of liability, *Morgan* contends that the improper joinder rule does not require remand "because, at the time of filing, [insured plaintiffs] had claims against the non-diverse defendant [adjuster]."[100] *Morgan* held that *Ramirez*'s focus on the plaintiff's claims at the time of removal was a misinterpretation of precedent, and that "no Fifth Circuit case holds that the improper-joinder rule requires courts to pretend that a defendant that was initially joined properly *became* improperly joined later."[101]

This Court respectfully disagrees. *Morgan*'s central reasoning is that the requirement that district courts consider the claims as they existed in the plaintiff's state court petition at the time of *removal*—as opposed to the time the plaintiff asserted such claims—"has never been part of Fifth Circuit holdings. None of the holdings cited in either *Ramirez* or *Hoyt* relied on the analysis's timing. In each opinion, no material facts changed between the plaintiff filing the case and the defendant's removal. This phrase is dicta."[102] But the Fifth Circuit itself has rebuked this reasoning. The Fifth Circuit held that its en banc decision in *Smallwood v. Illinois Central Railroad Co.*[103] "'resolv[ed] issues surrounding removal based on improper joinder' and 'provides the procedural

---

[99] *See Ramirez v. Allstate Vehicle & Prop. Ins. Co.*, 490 F. Supp. 3d 1092, 1106–08, 1111 (S.D. Tex. 2020) (Alvarez, J.).
[100] *Morgan*, 2021 WL 2102065, at *8.
[101] *Id.* at *9.
[102] *Id.* at *8 (citations omitted).
[103] 385 F.3d 568 (5th Cir. 2004) (en banc).

framework for deciding whether remand [is] required.' We have routinely relied on our *Smallwood* opinion as *the* authoritative source of our improper-joinder analysis. We have never suggested— much less held—that the analysis we offered there was dicta."[104] *Smallwood*, for its part, held that the Court shall find a fraudulent joinder when "the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant," and the *Smallwood* court attempted to reduce confusion by adopting that "phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.[105] Twelve years after *Smallwood*, the en banc Fifth Circuit clarified in *Flagg v. Stryker Corp* that, "to determine whether a plaintiff has improperly joined a non-diverse defendant, the district court must examine the plaintiff's possibility of recovery against that defendant *at the time of removal*."[106] The en banc Fifth Circuit further held that "[j]urisdictional facts are determined at the time of removal,"[107] that district courts "properly discoun[t] the citizenship" of defendants against whom the plaintiff will be unable to establish a cause of action in state court at the time of removal,[108] and that, when analyzing improper joinder, "the motive or purpose of the joinder of in-state defendants is not relevant,"[109] including if the purpose of joining in-state defendants was to state a valid claim against them in the first place. The *Flagg* court's holding that improper joinder is tested at the time of removal, not when the plaintiff's claims are first asserted, is consistent with numerous preceding Fifth

---

[104] *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp.*, 818 F.3d 193, 207 (5th Cir. 2016) (quoting *Holder v. Abbott Labs.*, 444 F.3d 383, 387 (5th Cir. 2006)).
[105] 385 F.3d at 573.
[106] 819 F.3d 132, 137 (5th Cir. 2016) (en banc) (emphasis in original).
[107] *Id.* (alteration in original) (quoting *Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 635 (5th Cir. 2014)).
[108] *Id.* at 138.
[109] *Id.* at 136 (quoting *Smallwood*, 385 F.3d at 574).

Circuit authorities,[110] and the Supreme Court's long-established holding.[111] Tellingly, *Morgan* does not cite *Flagg*. Contrary to *Morgan*'s assertion,[112] the Fifth Circuit en banc and otherwise has repeatedly instructed district courts to test improper joinder at the time of removal, not as the plaintiff's claims "existed *when first made*."[113]

Accordingly, the Court may apply the improper joinder test to Defendant Maxum's election of liability, because the election was filed in state court before removal to federal court,[114] and therefore governs whether Plaintiff can state a claim against the nondiverse Truitt at the time of removal.[115] However, there is one final hurdle to the application of *Ramirez* to the facts of this case. The Court turns to *Morgan*'s last argument that remand is still required.

### 3. *The Court Must Exercise Diversity Jurisdiction vs. The Court Must Remand a Doubtful Case*

*Morgan* holds that, because a Court must presume a suit lies outside its limited jurisdiction and resolve all doubts and ambiguities in favor of remand, remand is required in the face of confusing precedents governing the improper joinder and voluntary-involuntary rules.[116]

---

[110] *E.g.*, *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (emphasis added) ("To determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed *at the time of removal*."); *Chavez v. State Farm Lloyds*, 746 F. App'x 337, 340–41 (5th Cir. 2018) (quotation omitted) ("The court determines whether there is federal jurisdiction based on the claims in the state court petition as they existed at the time of removal."), *abrogated on other grounds by Agredano v. State Farm Lloyds*, 975 F.3d 504 (5th Cir. 2020).

[111] *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) (emphasis added) (instructing lower courts to determine a party's right to remove to federal court "according to the plaintiffs' pleading *at the time of the petition for removal*").

[112] *See Morgan v. Chubb Lloyds Ins. Co. of Tex.*, No. 4:21-cv-00100-P, 2021 WL 2102065, at *8 (N.D. Tex. May 25, 2021).

[113] *Ramirez v. Allstate Vehicle & Prop. Ins. Co.*, 490 F. Supp. 3d 1092, 1104 (S.D. Tex. 2020) (Alvarez, J.).

[114] *See* Dkt. No. 1-5.

[115] *See Ramirez*, 490 F. Supp. 3d at 1111 (footnotes omitted) ("Because Defendant [insurer's] § 542A.006(a) election cannot be nullified, Plaintiff has no reasonable possibility of establishing a cause of action against the non-diverse party in state court and the Court holds that Defendant's election has no reasonable possibility of being reversed on appeal. The Court agrees with Defendants that Defendant [adjuster] was improperly joined at the time of removal.").

[116] *Morgan*, 2021 WL 2102065 at *10 (first quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); then quoting *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007); and then quoting *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999)).

This Court respectfully disagrees, not with the proposition that doubts and ambiguities in the facts and law should result in remand, but with the proposition that the controlling law is sufficiently ambiguous that remand must be permitted. For all of the reasons discussed in Sections II.b.1–2 of this opinion, especially the Fifth Circuit's decisions illuminating the proper application of the voluntary-involuntary rule and the improper joinder rule, the Court does not find that the Fifth Circuit has left the law in such disarray that the Court is entitled to breezily remand a case over which diversity jurisdiction evidently attaches. The Court may not decline jurisdiction properly vested:

> It is most true that this Court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction if it should. . . . We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously to perform our duty.[117]

The canon that removal statutes are to be interpreted strictly against removal and for remand "does not trump a plain language reading of the [removal] statute's terms."[118] The Court declines to simply say that there are doubts in the controlling law that require remand, rather than resolving those doubts to the best of the Court's ability to identify the proper contours of federal and state jurisdiction.

### III. CONCLUSION AND HOLDING

In light of *Morgan* and *Kessler*,[119] the Court reaffirms its September 29, 2020 opinion in *Ramirez v. Allstate Property Insurance Co.*[120] Therefore, Defendant Maxum Casualty Insurance

---

[117] *Cohens v. Virginia*, 19 U.S. 264, 404 (1821).
[118] *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002).
[119] *Morgan*, 2021 WL 2102065; *Kessler v. Allstate Fire & Cas. Ins. Co.*, No. 4:21-cv-00173-P, 2021 WL 2102067 (N.D. Tex. May 25, 2021).
[120] 490 F. Supp. 3d 1092 (S.D. Tex. 2020) (Alvarez, J.).

Company's election of liability for Defendant Truitt under Texas Insurance Code § 542A.006 in state court prior to removal to federal court[121] "effectively and irreversibly dismisses the agent from the case and results in no reasonable basis for the District Court to predict that the plaintiff may be able to recover against the agent, thereby resulting in a disregard of the citizenship of the agent for purposes of analyzing diversity jurisdiction under 28 U.S.C. § 1332(a)."[122] The Court also finds that Plaintiff's *ad damnum* clause for $250,000 or less,[123] together with her breach of contract; violation of Texas Insurance Code; unfair insurance practice; knowing deceptive trade practice; breach of the covenant of good faith and fair dealing; exemplary damages; and attorney fees claims for "extensive" damages to Plaintiff's commercial strip center's "roof, exterior, and suite interiors,"[124] establish as a matter of "common sense"[125] that it is "more likely than not that the amount of the claim will exceed" $75,000.[126]

Accordingly, for all the foregoing reasons, the Court **GRANTS** Defendant Maxum's motion to dismiss,[127] **DISMISSES** Defendant Truitt from this case with prejudice, and holds that this Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 31st day of August 2021.

_____
Micaela Alvarez
United States District Judge

---

[121] Dkt. No. 1-5.
[122] *Ramirez*, 490 F. Supp. 3d at 1111.
[123] Dkt. No. 1-3 at 10, ¶ 2.
[124] *Id.* at 12, ¶ 10.
[125] *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995).
[126] *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 n.13 (5th Cir. 1998).
[127] Dkt. No. 10.